# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-24081-Civ-TORRES

OMELIA DEL ROSARIO GUTIERREZ,
ANA M. CASTILLO, CECILA RAMIREZ
BRITO, and all others similarly situated
under 29 U.S.C. 216(b),

   Plaintiff,

v.

GALIANO ENTERPRISES OF MIAMI,
CORP., d/b/a GALIANO RESTAURANT,
SULTAN MAMUN,

   Defendants.
_____/

## **ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Omelia Del Rosario Guiterrez's, Ana M. Castillo's, and Cecila Ramirez's (collectively, "Plaintiffs") motion for summary judgment against Galiano Enterprises of Miami d/b/a Galiano Restaurant ("Galiano Restaurant") and Sultan Mamun ("Mr. Mamun") (collectively, "Defendants"). [D.E. 65]. Defendants responded to Plaintiffs' motion on May 23, 2019 [D.E. 69] to which Plaintiffs replied on May 30, 2019. [D.E. 70]. Therefore, Plaintiffs' motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authorities, and for the reasons discussed below, Plaintiffs' motion is **DENIED**.[1]

---

[1]  On April 2, 2018, the parties consented to the jurisdiction of the undersigned Magistrate Judge. [D.E. 42].

1

## I. BACKGROUND

Plaintiff filed this action on November 7, 2017 for (1) overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), (2) federal minimum wage violations, and (3) Florida minimum wage violations. [D.E. 1]. Plaintiffs allege that Galiano Restaurant is a company that regularly transacts business in Miami-Dade County and that Mr. Mamun is a corporate officer/manager of the corporation. Between approximately 2011 to 2017, Plaintiffs claim that they worked more than forty hours per week, but that Defendants failed to compensate them as required under the FLSA. Plaintiffs also allege that they worked for roughly two dollars per hour in violation of the minimum wage provisions of the FLSA and Florida law. Because Defendants failed to compensate Plaintiffs for overtime hours and paid Plaintiffs below the federal and state minimum wage, Plaintiffs request damages, attorneys' fees, court costs, and interest.

## II. APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94)).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary

will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

#### A. *Principles of the FLSA*

The FLSA requires employers to pay their employees at least one and a half times their regular wage for every hour worked in excess of forty per week. *See* 29 U.S.C. § 207(a)(1). Approximately seventy years ago, the Supreme Court stated that the "the prime purpose" of the FLSA was "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). In the decades since *O'Neil*, the Eleventh Circuit has followed that principle to counteract the inequality of bargaining power between employees and employers. *See, e.g., Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1332 (11th Cir. 2014); *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir.2004) (same); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir.1982) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory."); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197 n.1 (5th Cir. 1972).

With these principles in mind, a plaintiff who has worked overtime without pay may bring a private FLSA action for damages. *See* 29 U.S.C. § 216(b). An

4

unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007). "Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, . . . [i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." *Id.* "[I]f an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes," then "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1315–16 (quotation marks omitted).

### B.     *Whether Mr. Mamun was Plaintiffs' Employer*

The first issue is whether Plaintiffs are entitled to summary judgment on whether Mr. Mamun was their "employer" under the FLSA. An individual cannot be held "liable for violating the overtime provision of the FLSA unless he is an 'employer' within the meaning of the Act." *Alvarez Perez v. Sanford-Orlando Kennel Club*, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (citing 29 U.S.C. § 207(a)(1); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984)). The FLSA broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Whether an individual falls within this definition "does not depend on technical or 'isolated factors but

5

rather on the circumstances of the whole activity.'" *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235, 237 (5th Cir.1973) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "'[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). "'Operational control means management of day-to-day business functions such as employee compensation, 'direct responsibility for the supervision' of employees, or general operations.'" *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1332 (S.D. Fla. 2016) (quoting *Baltzley v. Berkley Grp., Inc.*, 2010 WL 3505104, at *2 (S.D. Fla. Sept. 3, 2010) (quoting *Patel*, 803 F.2d at 637-38)).

Although *Patel* recognized personal liability for corporate officers, it "did not purport to limit personal liability to officers, and the Act's broad definition of 'employer' does not admit of such a limitation." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013). Indeed, as a general matter, "non-officers may be held personally liable under FLSA." *Id.* at 1313. In clarifying "the degree and type of operational control that will support individual liability under FLSA," *id.*, the Eleventh Circuit explained in *Lamonica* that "[a] supervisor's ownership interests in the corporation and control over the corporation's day-to-day functions are relevant to [whether the individual is an employer] because they are indicative of the supervisor's role in causing the violation." *Id.* However, the "primary concern is the supervisor's role in causing the FLSA violation" and "to

6

support individual liability, there must be control over 'significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee.'" *Id*. at 1314 (quoting *Alvarez Perez*, 515 F.3d at 1160).

In the Eleventh Circuit, courts look to the "economic reality" of the situation to determine whether an individual is an employer for purposes of the FLSA. The economic reality test looks to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)); *see also Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168, 1183 (S.D. Fla. 2007). "[N]o single factor is dispositive. 'Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive.'" *Santos v. Cuba Tropical, Inc.*, 829 F. Supp. 2d 1304, 1314-15 (S.D. Fla. 2011) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Plaintiffs argue that there is no genuine issue of material fact that Mr. Mamun was their employer. Plaintiffs contend that Mr. Mamun is a shareholder of the corporation, a 100 percent owner, that he is the only signator on the bank accounts of the restaurant, and that he is the lone individual who can bind the company's financial decisions. Plaintiffs also rely on testimony in the record that Mr. Mamun (1) pays the restaurant's bills, (2) authorizes purchases for the

7

company, (3) checks sales reports, (4) talks to the managers, (5) checks the register, (6) speaks with employees, (7) interacts with employees, (8) checks the wages and tips given to employees, and (9) hires/fires all employees. Therefore, Plaintiffs conclude that the evidence presented conclusively shows that Mr. Mamun was their employer and that he can be held individually liable under the FLSA.

Plaintiffs' argument is unpersuasive, however, because there is an abundance of factual disputes in the record as to whether Mr. Mamun was involved in the day-to-day operations of the restaurant. The manager of the restaurant, Carleia Ordaz ("Ms. Ordaz") testified that she – not Mr. Mamun – made every decision in the operation of the business and that the latter did not spend more than one hour on any given day that the business operated. She also stated that she had financial control over the restaurant's daily financial decisions, including management of the company's employees:

> Q: Who decides how much beer or wine to purchase at a time?
> A: I do.
> Q: Who decides how much food to buy at any time?
> A: I do.
> . . .
> Q: Who decides how many employees are needed each day?
> A: Myself.
> Q: Who decides which employees will clean the restaurant on a daily basis?
> A: I do. No one cleans. Only myself.
> Q: Is that because you decided that or Mr. Mamun decided that?
> A: I did.
> Q: Who opens the business?
> A: I do.
> . . .
> Q: Who makes the decisions on whether an employee is fired?
> A: I do.
> Q: Who makes the schedules for the employees?

>A: I do.
>Q: Who decides which food products to put in the inventory?
>A: I do. The menu, everything, me.
>Q: What responsibilities does Sultan have at the restaurant that are different
>from yours?
>A: To pay the bills, and to take the papers of everything, the sales of the business and everything, to the accountant.
>Q: What other duties – other than what you just mentioned, what other duties does Sultan Mamun have?
>A: Nothing else.

[D.E. 66-4 at 87-90].

Not to be deterred, however, Plaintiff insists that there is no genuine issue of *material* fact because even if Ms. Ordaz performed many, if not all, of the day-to-day operations of the business, Mr. Mamun had the final decision on any matter. That is, Plaintiff contends that Mr. Mamun's status as the owner of the business and his ability to sign employee checks (which are the only uncontested facts between the parties) is dispositive on the question of whether he was Plaintiffs' employer. Plaintiffs therefore conclude that, despite conflicting evidence in the record, the facts establish that Mr. Mamun was their employer.

The Eleventh Circuit has recognized that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Patel*, 803 F.2d at 637–38 (internal quotation marks and citation omitted). However, the Eleventh Circuit has also made clear that to qualify as an employer for this purpose, an officer "must either

9

be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id*. at 638.

The decision in *Patel* is instructive given the question presented because the defendant in that case was both a president and vice-president of the corporation, as well as a director and principal stockholder. Yet, the Eleventh Circuit held that the defendant was not an employer for FLSA purposes because he did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Id*. (internal quotation marks omitted) (citing *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 263 (8th Cir. 1963) (finding that a majority stockholder who visited the company only two or three times a year and "had nothing to do with the hiring of the employees or fixing their wages or hours" was not an employer under the FLSA)). While the Eleventh Circuit acknowledged that the defendant could have played a greater role in the operations of the company, the Court focused on the role that he did play and concluded that he "lacked the operational control necessary for the imposition of liability as an 'employer' under the FLSA." *Patel*, 803 F.2d at 638; *see also Wirtz*, 322 F.2d at 262 ("There is little question from the record but what Thompson as the majority stockholder and dominant personality in Pure Ice Company, Inc., could have taken over and supervised the relationship between the corporation and its employees had he decided to do so. A careful reading of the record, however, indicates that he did not do so.").

The same reasoning applies to the facts of this case because Plaintiffs argue that Mr. Mamun's position as the company's owner and shareholder qualifies him as an employer for FLSA purposes. But, the Eleventh Circuit has repeatedly rejected this argument and has focused more so on the role of the individual in determining whether he or she constitutes an employer under the FLSA. To that end, there is a factual dispute as to the duties that Mr. Mamun performed. Plaintiff contends that Mr. Mamun was heavily involved in the day-to-day affairs of the company whereas Defendants argue just the opposite. And both parties rely on sworn evidence in the record to support their respective positions. As such, there are genuine issues of material fact on whether Mr. Mamun can be held individually liable as an employer under the FLSA and therefore Plaintiffs' motion for summary judgment must be **DENIED**.

### C. *Whether Defendants Can Rely on a Tip Credit*

Plaintiffs' next argument is that Defendants cannot rely on a tip credit to offset any failure to pay wages because (1) Defendants had no system and/or policy to monitor the amount of tips Plaintiffs received, (2) Defendants failed to maintain time records for the number of hours that Plaintiffs worked, and (3) Defendants failed to provide adequate notice that it intended to incorporate tips as a part of the company's minimum wage obligations. Plaintiffs rely, for support, on several deponents and employees of the restaurant who testified that individuals kept their own tips and that Defendants failed to adequately inform them that tips were part of their statutory wage. While Plaintiffs concede that Defendants had posters that

referenced overtime and minimum wage laws, Plaintiffs maintain that the posters were taken down due to construction and that many employees could not understand them anyways. Plaintiffs therefore conclude that Defendants' failure to comply with the FLSA and Florida law prohibit the use of a tip credit to offset wages.

For most employees, the minimum wage that an employer must pay an employee under the FLSA is $7.25 an hour. *See* 29 U.S.C. § 206(a)(1)(C). This rule gives way, however, if the employee is a "tipped employee," which authorizes an employer to pay the employee (1) an hourly wage of $2.13 plus (2) an additional amount in tips that brings the total wage up to the federal minimum wage of $7.25 an hour. 29 U.S.C. § 203(m). An employer who uses an employee's hourly tips to reach the minimum hourly wage due the employee is said to take a "tip credit." This means that a tip credit is the difference between the minimum wage and the amount paid to a tipped employee. *See Crate v. Q's Rest. Grp. LLC*, 2014 WL 10556347, at *2 (M.D. Fla. May 2, 2014). It essentially allows an employer of a tipped employee to pay a reduced minimum wage if the difference between the current minimum wage rate and the reduced rate that the employer pays is covered with the employee's actual tips. *See* 29 U.S.C. § 203(m).

An employer has the burden of proving that it is entitled to take a tip credit for an employee and the number of tips received by the employee to be credited. *See Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979). Unless an employer satisfies its burden of showing the applicability of the tip credit, an

employee is "entitled to the full minimum wage for every hour worked." *Id*. "An employer seeking to take a tip credit must show that (1) the employee at issue is a tipped employee, (2) the employer informed the employee of the tip-credit provision, and (3) the employee retained all tips he received, except when an employer requires an employee to participate in a tip pool with other employees who customarily and regularly receive tips." *Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1354 (M.D. Fla. 2016) (citing *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 580 (9th Cir. 2010)). If an employer fails to meet any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result. *See Garcia v. Koning Rest. Int'l L.C.*, 2013 WL 8150984, at *4 (S.D. Fla. May 10, 2013); *see also Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (finding that an employer must satisfy prerequisites "even if the employee received tips at least equivalent to the minimum wage").

Here, Plaintiffs argue that Defendants cannot rely on a tip credit because Defendants had no system and/or policy to monitor the number of tips that Plaintiffs received, and Defendants failed to maintain adequate time records for the number of hours that Plaintiffs worked. Plaintiffs' contention is unpersuasive, however, because neither of these failures undermine the three elements set forth above. And even if Plaintiffs' contentions were undeniably true (which they are not for the reasons explained below), the lack of time records or a system to track tips does not defeat an employer's use of a tip credit. Making matters worse, Plaintiffs

13

fail to reference a single case that supports their argument, and – based on the undersigned's review of the relevant case law – we have found no authority that imposes this requirement for an employer to rely on a tip credit. Accordingly, Plaintiffs' argument lacks merit.

Putting aside that shortfall, Plaintiffs' argument fails for another reason because there is conflicting evidence in the record on whether Defendants tracked Plaintiffs' tips and the number of hours worked. Ms. Ordaz testified, for example, that she recorded the number of tips each employee received to ensure that each employee received adequate compensation for the number of hours worked. In fact, Ms. Ordaz testified that she performed weekly calculations and multiplied the number of hours worked by a tip credit. Ms. Ordaz questioned employees on how many tips they made each week and altered an employee's paycheck as needed to ensure that it complied with state and federal law. Therefore, even if Defendants' failure to monitor tips and hours were relevant to the question of whether Defendants could rely on a tip credit, there is conflicting evidence in the record that precludes entry of summary judgment.

With that being said, Plaintiffs argue that Defendants failed to provide adequate notice to employees that the company intended to take a tip credit against their wages under the FLSA.[2] To provide sufficient notice, the employer "must inform its employees that it intends to treat tips as satisfying part of the employer's minimum wage obligations." *Vancamper v. Rental World, Inc.*, 2011 WL 1230805,

---

[2] Only the second element of the three-pronged test is in dispute. We therefore need not consider the first or third elements.

14

at *6 (M.D. Fla. March 31, 2011) (internal quotation and citation omitted). "Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it." *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *19 (S.D.N.Y.2006) (citing *Kilgore,* 160 F.3d at 298–300). To "inform" an employee requires less effort than it would to "explain" the tip credit to the employees. *Kilgore*, 160 F.3d 294, at 298.

Plaintiffs suggest that it is undisputed that Defendants failed to provide adequate notice to the company's employees. But, there is conflicting evidence in the record on whether employees were notified of the tip credit policy. Ms. Ordaz testified, for instance, that she informed employees of the policy when they were hired and explained how employees would be compensated. [D.E. 66-4 at 44] ("When I hire them, I explain this to them. It's by the hour, plus tips."). And at least three deponents testified that wage and hour posters were displayed to give employees additional notice of overtime laws:

> Q: Do you know if the restaurant had any posters that referenced the minimum wage laws?
> A: Yes, I saw that.
> Q: When did you see that?
> A: When I started, if I am not mistaken.
> Q: In 2016?
> A: Yes.

[D.E. 66-8 at 21] (Martha Martinez Deposition).

> Q: Was there ever a poster present at Galiano that discussed overtime laws?
> A: Yes.
> Q: Where was it located?

15

> A: It's located close to -- okay, in a hallway that goes toward the bathrooms. There are many posters there regarding employee rights and obligations.

[D.E. 66-9 at 27] (Fania Trutie Deposition).

> Q: Did you ever see a poster discussing overtime hours at Galiano?
> A: Yes.
> Q: Where was this?
> A: In the hallway that goes towards the bathroom.

[D.E. 66-10 at 21] (Leida Ochoa Deposition). Therefore, contrary to Plaintiffs' argument, there is conflicting evidence in the record on whether the company provided verbal notice to employees, including a poster with relevant statutory provisions on overtime laws.

Plaintiffs' final contention is that a poster displayed in the workplace on overtime laws was inadequate to provide employees notice of state and federal overtime laws because it was only presented in English and many employees only understood a different language. This argument is misplaced, however, because "the FLSA does not require a rigorous explanation to employees about how the tip credit works. In fact, such an explanation would serve no logical purpose." *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1312 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008). If employees were advised and "receive[d] a wage plus tip amount equal to minimum wage or higher . . . they do not need to understand how the statutory mechanism applies to their employer." *Id*. at 1312 (finding that "employee understanding" would be an untenable legal standard). In addition, there are factual disputes as to how many employees understood the poster notice and how its removal undermined the company's notice

16

obligations. *See, e.g., Howard v. Second Chance Jai Alai LLC*, 2016 WL 3883188, at *3 (M.D. Fla. July 18, 2016) ("[T]he evidence in the record regarding what notice was given to Plaintiffs is vague and inconclusive, including Plaintiffs' depositions. Neither party is entitled to summary judgment because the evidence creates an issue of fact regarding whether Defendant complied with the notice requirements"). Because there is conflicting evidence in the record on whether, and to what extent, Defendants provided adequate notice to employees on the company's intention to take a tip credit, Plaintiffs' motion for summary judgment is **DENIED**.

## IV. *CONCLUSION*

For the foregoing reasons, Plaintiffs' motion for summary judgment is **DENIED**. [D.E. 65].

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of June, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge